**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**AT LEXINGTON**

**CRIMINAL ACTION NO. 12-65-DLB-CJS-5**

**UNITED STATES OF AMERICA**                                                    **PLAINTIFF**

**v.**                                  **MEMORANDUM OPINION AND ORDER**

**ELI HOLLEY**                                                                 **DEFENDANT**

**\*\*\*   \*\*\*   \*\*\*   \*\*\*   \*\*\*   \*\*\***

This matter is before the Court on two pro se motions filed by Defendant Eli Holley: a "Motion Objecting to the Lien" (Doc. # 1113) and a "Motion Requesting a Writ of Error Coram Nobis" (Doc. # 1116).  The United States has filed Responses (Docs. # 1115 and 1117) and Holley has filed Replies (Docs. # 1124 and 1125).  For the reasons below, both motions will be **denied**.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

This matter involves an international conspiracy to commit wire fraud that lasted from August 2010 to September 2012.  *See United States v. Carmichael*, 676 F. App'x 402, 404 (6th Cir. 2017).  The Sixth Circuit summarized the conspiracy as follows:

> [T]he members [of the conspiracy] created fictitious businesses in the United States and opened bank accounts using false identification documents.  The members of the conspiracy then used these businesses to list automobiles for sale over the internet.  Prospective purchasers, intending to buy the vehicles, transferred money into the bank accounts.  Members of the conspiracy in the United States would then drain these accounts and, after keeping a portion of the money for themselves, wire the funds overseas to their European coconspirators.  The prospective purchasers never received the vehicles they intended to buy.

*Id*.

On May 24, 2012, a federal grand jury in Lexington, Kentucky returned an indictment on one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1343. (Doc. # 1). On August 15, 2012, the grand jury returned a superseding indictment with the same count adding Holley as a defendant, among others. (Doc. # 12). On August 21, 2012 and March 12, 2013, respectively, the grand jury returned second and third superseding indictments which modified the allegations against the existing defendants and added new defendants. (Docs. # 43, 152).

On December 2, 2013, Holley moved for rearraignment. (Doc. # 326). On December 4, 2013, Holley and her counsel, Attorney Elizabeth S. Hughes, appeared for rearraignment before District Judge Joseph M. Hood. (Doc. # 331). Holley pled guilty to the count of conspiracy to commit wire fraud in the Third Superseding Indictment. (*Id*.). Judge Hood accepted Holley's guilty plea which she made without a plea agreement. (*Id*.). On October 27, 2014, Holley filed a pro se Motion to Withdraw Her Guilty Plea (Doc. # 480) which Judge Hood denied on November 10, 2014 (Doc. # 492).

On March 9, 2015, Holley appeared for sentencing before Judge Hood. (Doc. # 676). Ms. Hughes represented Holley at sentencing. (*Id*.). Judge Hood sentenced Holley to a 36-month term of imprisonment followed by 3 years of supervised release. (Doc. # 678).

In December 2014, the Court held a three-day hearing on the issue of victim loss. (Docs. # 742, 743, and 744). On April 7, 2015, the Court held a hearing on the amount of restitution owed to specific victims of the conspiracy. (Doc. # 727). At the close of the hearing, Judge Hood ordered Holley to pay restitution, jointly and severally with several codefendants, in the amount of $1,807,517.06. (Doc. # 731 at 14). On June 11, 2015,

the Court entered an Amended Judgment against Holley which specified that she was liable for the restitution.  (Doc. # 777 at 5).  The Amended Judgment noted that the restitution was to be paid as a "[l]ump sum payment . . . due immediately . . . ," and did not specify a payment plan.  (*Id*. at 6).  On June 15, 2015, Holley received notice that her restitution debt would be added to the Treasury Offset Program ("TOP"), which allows the Treasury Department to collect delinquent debts owed to federal agencies through administrative offset.  (Doc. # 1115 at 1-2).  Holley's restitution debt was formally placed in TOP on August 20, 2015.  (*Id*. at 2).

On June 17, 2015, Holley filed a Notice of Appeal with the Sixth Circuit seeking review of the Amended Judgment.  (Doc. # 789).  On appeal, Holley was represented by Attorney Gary W. Crim and argued that the United States failed to show that the amount of restitution awarded was directly related to the conspiracy.  *Carmicheal*, 676 F. App'x at 405, 412.  On January 13, 2017, the Sixth Circuit issued an Opinion affirming the Amended Judgment.  *Id*. at 413.  Holley then filed a petition for writ of certiorari with the United States Supreme Court on April 6, 2017 (Doc. # 831), which was denied on May 15, 2017.  (Doc. # 837).  Holley thereafter completed her term of imprisonment, and her supervised release term commenced on December 1, 2017.  (Doc. # 940-2 at 1).

On November 2, 2018, Holley moved this Court for an emergency hearing and requested that the Court modify her restitution due to her then-current financial situation. (Doc. # 919).  This motion was denied on April 19, 2019.  (Doc. # 962).  On May 7, 2019, Holley appealed the denial of her motion for hearing and to modify her restitution to the Sixth Circuit.  (Doc. # 966).  The Sixth Circuit affirmed the Court's denial on January 29, 2020.  (Doc. # 1005).

3

On April 25, 2023 and May 19, 2023, respectively, Holley filed the Motion Objecting to the Lien and the Motion Requesting a Writ of Error Coram Nobis.  (Docs. # 1113 and 1116).  The United States has filed Responses (Docs. # 1115 and 1117), Holley has filed Replies (Docs. # 1124 and 1125), and the Motions are now ripe for review.

## II.    ANALYSIS

Because Holley is proceeding pro se, the Court is required to liberally construe her motions.  *See United States v. Houston*, 792 F.3d 663, 667 (6th Cir. 2015) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam)).  Through the Motion Objecting to the Lien and its Reply, Holley challenges a lien that was placed against her property and requests the return of approximately $7,900 in administratively offset funds.  (Docs. # 1113 and 1125 at 4).  Through the Motion Requesting a Writ of Error Coram Nobis, Holley moves the Court to vacate her conviction on the grounds that she received ineffective assistance of counsel before this Court and on appeal.  (Doc. # 1116).  Holley also appears to raise additional grounds for coram nobis relief through the Reply.  (Doc. # 1124 at 12-13).  The Court will address them in turn.

### A.    Motion Objecting to the Lien

Holley first challenges a lien that was placed against her property and requests the return of approximately $7,900 in administratively offset funds.  (Docs. # 1113 at 1, and 1125 at 4).  As the Court understands, Holley challenges the lien that was created upon entry of the order of restitution and the Amended Judgment.  (*See* Doc. # 1113 at 1 (citing 18 U.S.C. § 3613(c))).  Under applicable law, "an order of restitution . . . is a lien in favor of the United States on all property and rights of the person fined . . . [which] arises on the entry of judgment . . . ."  18 U.S.C.  § 3613(c).

Holley argues that the Court lacked statutory authority to place or enforce the lien against her property because "there has never been a finding that [she] was or is in default for making payments toward her restitution order."  (Doc. # 1113 at 1-2).  In support, Holley cites 18 U.S.C. § 3613A (*id*. at 2) which provides, in pertinent part, as follows:

> Upon a finding that the defendant is in default on a payment of a fine or restitution, the court may, pursuant to section 3565, revoke probation or a term of supervised release, modify the terms or conditions of probation or a term of supervised release, resentence a defendant pursuant to section 3614, hold the defendant in contempt of court, enter a restraining order or injunction, order the sale of property of the defendant, accept a performance bond, enter or adjust a payment schedule, or take any other action necessary to obtain compliance with the order of a fine or restitution.

18 U.S.C. § 3613A(a)(1).  According to Holley, § 3613A requires a district court to find a defendant to be in default on their restitution payments before a lien over the defendant's property can be established or enforced.  (Doc. # 1113 at 2).  Holley further asserts that she was never found to be in default.  (*Id*. at 2).  Holley also argues that even if she was found to be in default, the Cout would need to assess the factors outlined in § 3613A(a)(2) before placing a lien against her property.  (*Id*.).  Moreover, Holley requests that the Court "[o]rder that no lien [can be] placed against [her] federal[ly] . . . tax[able] income . . . now [or] in [the] near future" until she is found to be in default.  (*Id*. at 4).  In her Reply, Holley clarifies that her "specific complaint" is not that her restitution debt was placed in TOP but that the lien was placed against her property.  (Doc. # 1125 at 1-2).

Contrary to Holley's arguments, however, a finding of default is not required for a restitution lien to be created or enforceable against a defendant's property.  Pursuant to § 3613(c)'s plain language, "an order of restitution . . . *is a lien* in favor of the United States on *all property and rights* of the person fined . . . [which] *arises on the entry of judgment* . . . ."  18 U.S.C. § 3613(c) (emphasis added).  The statute further provides that the United

States may enforce a judgment imposing restitution "in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law."  18 U.S.C. § 3613(a), (f).  Thus, a lien on Holley's property was created once the Amended Judgment was entered regardless of whether she was found to be in default.  *See United States v. Key*, 837 F. App'x 348, 350 (6th Cir. 2020) ("[A]fter the separate final judgments were entered, the Government obtained statutory liens under [§ 3613(c)] on all property belonging to the [defendants].").  Assuming that notice of the lien was properly filed, which Holley does not challenge, the lien would also be enforceable against Holley's property.  *See* 18 U.S.C. § 3613(d); *see also United States v. Gallion*, 504 F. App'x 373, 376-77 (6th Cir. 2012) ("The Government may enforce [a] restitution order against all of [a] defendant['s] property or property rights, with certain limited exceptions.").

Holley's reliance on § 3613A is misplaced.  Although there appears to be a dearth of on-point caselaw interpreting the statute, § 3613A's plain language does not concern or even reference the establishment or enforceability of liens.  Instead, the statute merely permits a court, upon the request of the United States, to act to further compliance with a restitution order where a defendant is found to be in default.  Moreover, nowhere does the statute appear to modify § 3613's provisions regarding liens and their enforceability. Based on the above, the Court concludes that a finding that Holley was in default was not necessary for a lien to be created or enforceable against her property.

Liberally construed, the Motion Objecting to the Lien could be read to assert an additional argument.  Although indirectly, Holley appears to challenge any administrative offsetting of payments on her restitution debt before this Court finds her to be in default. (*See generally* Docs. # 1113, 1125).  To the extent Holley raises this argument, however,

it fails.  This is because the Sixth Circuit already determined that a 15% levy on Holley's social security disability payments was appropriate.  *See United States v. Holley*, 2020 WL 2316052, at *2 (6th Cir. 2020 Jan. 29, 2020) (citing 26 U.S.C. § 6331(h)).

For all of these reasons, the "Motion Objecting to the Lien" (Doc. # 1113) will be **denied**.

**B.     Motion Requesting Writ of Error Coram Nobis**

Holley next moves for a writ of error coram nobis vacating her conviction.  (Doc. # 1116).  As the basis for the writ, Holley identifies three supposed instances of ineffective assistance of counsel before this Court and on appeal.  (*Id*. at 2-5).  Additionally, Holley appears to raise separate bases for coram nobis relief in her Reply (Doc. # 1124) which the Court will also address.

*1.  Coram Nobis Relief is Potentially Barred by Laches*

"The writ of error coram nobis is used to vacate a federal sentence or conviction when a § 2255 motion is unavailable—generally [as here], when the petitioner has served his sentence completely and thus is no longer 'in custody' as required for § 2255 relief." *Blanton v. United States*, 94 F.3d 227, 231 (6th Cir. 1996).  That said, the standards for granting relief under coram nobis and § 2255 are substantially the same.  *Id*. at 235 (citing *Pitts v. United States*, 763 F.2d 197, 198 n.1 (6th Cir. 1985) (per curiam)).  Coram nobis relief will only be granted when a petitioner demonstrates "(1) an error of fact, (2) unknown at the time of trial, (3) of a fundamentally unjust character which probably would have altered the outcome of the challenged proceeding if it had been known."  *Blanton*, 94 F.3d at 231 (citing *Flippins v. United States*, 747 F.2d 1089, 1091 (6th Cir. 1984) (per curiam)).  "It is presumed the proceedings were correct and the burden rests on the accused to

show otherwise." *United States v. Morgan*, 346 U.S. 502, 512 (1954). "A petition for a writ of error coram nobis is an appropriate vehicle for a claim based on ineffective assistance of counsel." *United States v. Abou-Khodr*, 2013 WL 4670856, at *5 (E.D. Mich. Aug. 30, 2013) (citing *Chaidez v. United States*, 568 U.S. 342, 345 n.1 (2013).

Before turning to the merits of Holley's claims, the Court will briefly address the timeliness of the Motion. The doctrine of laches "bar[s] coram nobis relief if a petitioner delayed too long in bringing his claim[s]." *Blanton*, 94 F.3d at 231. Holley waited nearly five-and-a-half years after she was released from custody to request coram nobis relief. This delay is similar to delays the Sixth Circuit has deemed unreasonable. *See Craven v. United States*, 26 F. App'x 417, 419 (6th Cir. 2001) (seven-year delay between discovery of claims and filing of coram nobis petition was unreasonable). According to Holley, she "just discovered" her claims before filing the Motion. (Doc. # 1124 at 3). Holley explains that she only recently discovered her claims because she "is not trained in the law nor has she ever been in trouble with the law." (*Id*. at 2). However, a lack of legal training or knowledge does not generally excuse the failure to timely file motions. *See Ward v. Motley*, 2006 WL 2734456, at *5 (E.D. Ky. Sept. 25, 2006) (citing *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002)).

Although the Court has serious doubts as to the timeliness of the motion, it need not decide one way or another because the motion separately fails on the merits.

### 2. Holley's Ineffective Assistance of Counsel Claims Fail on the Merits

As discussed above, Holley chiefly premises her requested coram nobis relief on three supposed instances of ineffective assistance of counsel before this Court and on appeal. (Doc. # 1116 at 2-5).

To succeed on an ineffective-assistance-of-counsel claim, Holley must prove that her counsel's performance was deficient and that she was prejudiced by her counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A counsel's performance is deficient if it "fell below an objective standard of reasonableness." *Id.* at 687–88. Counsel's deficient performance is prejudicial if there is a "reasonable probability that, but for counsel's unprofessional errors, the judicial outcome would have been different." *Id.* at 694. To succeed on a claim of ineffective assistance of counsel, a defendant must offer more than conclusory statements to support her claim. *See Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000). Additionally, a defendant's arguments must be supported by facts in the record. *Lovejoy v. United States*, 1996 WL 331050, at *3 (6th Cir. 1996) (unpublished table opinion). With this standard in mind, the Court will address Holley's ineffective-assistance-of-counsel claims in turn.

### a. Counsel was not Ineffective by Failing to Object to the Lack of an Original Indictment

Holley first claims that she received ineffective assistance of counsel before this Court because Ms. Hughes "never challenged that there had never been an original [I]ndictment filed in this case returned in open court." (Doc. # 1116 at 2). According to Holley, the docket only shows three superseding indictments and not an original Indictment. (*Id.* at 3). In the absence of an Indictment to supersede, Holley argues that this Court was without jurisdiction to convict and sentence her. (*Id.*). Holley accordingly argues that Ms. Hughes' failure to object to the lack of an original Indictment constituted ineffective assistance of counsel. (*Id.*).

Contrary to Holley's assertions, the grand jury did return an original Indictment which appears on the docket. (*See* Doc. # 1). As far as the Court can tell, Holley may

be unable to view the Indictment on the docket because she only has the docket sheet for her specific case and not the main case.  Because an original Indictment was returned, any objection Ms. Hughes would have made to its nonexistence would have lacked merit.  And the failure to make a meritless argument cannot constitute deficient performance.  *Oliver v. Phillips*, 2021 WL 5833214, at *5 (6th Cir. July 12, 2021); *see also United States v. Lacey*, 1995 WL 258142, at *4 (6th Cir. May 2, 1995) ("[I]t is standard practice to accept superseding indictments from different grand juries in order to make corrections to or to add defendants, charges, or details to prior indictments.").   For these reasons, Holley's first ineffective-assistance-of-counsel claim lacks merit and is denied.

### b.  Counsel was not Ineffective by Failing to Object to the Lack of a Payment Plan

Holley next claims that she received ineffective assistance of counsel because Ms. Hughes "fail[ed] to make an objection in [this Court] that the [Court] failed to schedule payments when it came to [her restitution], which is mandated under the law."  (Doc. # 1116 at 3-4).  According to Holley, the Court is required to enter a payment schedule when it issues a restitution order.  (*Id*. at 4).  In support, Holley cites 18 U.S.C. § 3664 (*id*.) which provides, in pertinent part, as follows:

> Upon determination of the amount of restitution owed to each victim, the court shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, restitution is to be paid, in consideration of—
>
> (A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled;
>
> (B) projected earnings and other income of the defendant; and
>
> (C) any financial obligations of the defendant; including obligations to dependents.

18 U.S.C. § 3664(f)(2).  In this case, the Amended Judgment provided that Holley's restitution was to be paid as a "[l]ump sum payment . . . due immediately . . . ," and did not include a payment plan.  (Doc. # 777 at 6).  According to Holley, her counsel never objected to the lack of a payment plan and that failure to object constitutes ineffective assistance of counsel.  (Doc. # 1116 at 3-4).

Before addressing the merits of this claim, the Court acknowledges that Holley has consistently shown opposition to the establishment of a payment plan.  On December 12, 2017 and again on June 4, 2018, Holley refused to sign a waiver to set a monthly payment in any amount for her restitution.  (Doc. # 940-2 at 1).  The Court therefore doubts whether Holley actually wants a payment plan.  Regardless, she is incorrect that a payment plan "is mandated under the law."  (*See* Doc. # 1116 at 3).  Instead, courts are permitted to "direct [a] defendant to make a single, lump-sum payment[.]"  18 U.S.C. § 3664(f)(3)(A).  Thus, to the extent Ms. Hughes would have argued that a payment plan was required by law, the argument would have lacked merit.  Accordingly, Ms. Hughes' failure to make this argument was not deficient performance.  *See Oliver*, 2021 WL 5833214, at *5.

Moreover, Holley has not shown prejudice.  To demonstrate prejudice, Holley must show by a "reasonable probability that, but for counsel's unprofessional errors, the judicial outcome would have been different."  *Strickland*, 466 U.S. at 694-95.  If Ms. Hughes had objected to the lack of a payment plan, there is no guarantee that a payment plan would have been entered.  This is because, as noted above, courts are permitted to require restitution to be paid in one lump-sum payment.  For these reasons, Holley's second ineffective-assistance-of-counsel claim lacks merit and is denied.

      **c. Counsel was not Ineffective by Failing to Object to the Absence of Detailed Restitution Information in the Presentence Investigation Report**

Holley finally claims that she received ineffective assistance of counsel on appeal because Mr. Crim should have agued that this Court "failed to order [a] probation officer to create a report as required by law for the [Court] to fashion a restitution order." (Doc. # 1116 at 4-5). In support, Holley again cites to 18 U.S.C. § 3664 (*id*. at 5) which provides, in pertinent part, as follows:

> For orders of restitution under this title, the court shall order the probation officer to obtain and include in its presentence report, or in a separate report, as the court may direct, information sufficient for the court to exercise its discretion in fashioning a restitution order. The report shall include, to the extent practicable, a complete accounting of the losses to each victim, any restitution owed pursuant to a plea agreement, and information relating to the economic circumstances of each defendant. If the number or identify of victims cannot be reasonably ascertained, or other circumstances exist that make this requirement clearly impracticable, the probation officer shall so inform the court.

18 U.S.C. § 3664(a). Holley notes that the Presentence Investigation Report ("PSR") prepared in this case lacked the information that § 3664 states should be included. (Doc. 1116 at 4-6). Indeed, the PSR merely provided that "restitution shall be ordered in this matter and shall be imposed jointly and severally amongst the defendants." (Doc. # 791 at 13). Holley argues that Mr. Crim's failure to raise this issue on appeal constituted ineffective assistance of counsel. (Doc. # 1116 at 5). The Court disagrees.

While the PSR may have lacked detailed restitution information, there was no prejudice to Holley. In a complicated conspiracy or fraud case such as this one, it is not unusual for the restitution hearing to be litigated after the formal sentencing. In fact, the statute provides for that very event. Here, the issue of restitution and its amount was thoroughly litigated, including a multi-day hearing on the issue of victim loss as well as a

hearing on the proper amount of restitution.   (*See* Docs. # 742, 743, 744, and 798).

During these hearings, the court heard significant evidence and argument from the

parties.   (*See id.*).   Indeed, the Sixth Circuit noted that "the government provided a

multitude of evidence to support the losses documented in [a] summary chart."

*Carmichael*, 676 F. App'x at 412-13.   Considering this evidence, the Court has no reason

to conclude that the PSR's lack of detailed information affected the Court's ultimate

restitution finding.   Accordingly, Mr. Crim's failure to object to the PSR cannot constitute

ineffective assistance of counsel.   *See Strickland*, 466 U.S. at 694.   For these reasons,

Holley's third ineffective-assistance-of-counsel claim lacks merit and is denied.

### 3.   Holley Fails to Raise a Meritorious Claim Through Her Reply

Liberally construing Holley's motions, the Court now addresses grounds for coram

nobis relief that Holley appears to raise only in her Reply.   According to Holley, a "ledger"

used as evidence in her case "was illegally seized from [Holley's] co-defendant's vehicle

. . .which [the] co-defendant's attorney never challenged . . . ."   (Doc. # 1124 at 12).   This

seizure was apparently illegal because it "violat[ed] Indiana . . . law" governing the transfer

of property between law enforcement agencies.   (*Id.*).   Although Holley only briefly

mentions the seizure, the Reply could be read as asserting two claims: (1) a freestanding

challenge to the illegal seizure and (2) a related ineffective-assistance of-counsel claim.

To the extent the Reply is read to raise these claims, however, they both fail.

Holley has no standing to challenge the seizure because she "ha[d] no reasonable

expectation of privacy in [her co-defendant's] vehicle or the items seized from [the]

vehicle[.]" *United States v. Davis*, 430 F.3d 345, 360 (6th Cir. 2005).   Moreover, because

the seizure was allegedly violative of state law, a freestanding challenge to the seizure

would be a non-cognizable claim.  *See Jones v. Hendrix*, 599 U.S. 465, 490 (2023) (Relief under § 2255 "does not lie for errors of state law."); *see also Blanton*, 94 F.3d at 235 (standard for granting relief under § 2255 and coram nobis are substantially the same). Because Holley does not have standing to challenge the seizure, her counsel's failure to move to suppress the ledger was not ineffective assistance of counsel.  *See Oliver*, 2021 WL 5833214, at *5.

Based on the above, the "Motion Requesting a Writ of Error Coram Nobis" (Doc. # 1116) will be **denied**.

### III.   CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1)    Holley's "Motion Objecting to the Lien" (Doc. # 1113) is **DENIED**; and

(2)    Holley's "Motion Requesting a Writ of Error Coram Nobis" (Doc. # 1116) is **DENIED**.

This 27th day of September, 2023.



Signed By:
*David L. Bunning*
United States District Judge

K:\DATA\ORDERS\Lexington\2012\12-65-5 Order re Misc Mtns.docx